UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 23-cr-10186-ADB-4 |
| | ) | |
| KEONTE CAMPBELL | ) | |

## **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR DETENTION**

The defendant, Keonte Campbell, opposes the government's motion for pretrial detention (ECF No. 64) and moves this Court to release him on conditions pursuant to the Bail Reform Act, 18 U.S.C. § 3142 ("the BRA") and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Campbell proposes that the Court release him subject to the following conditions:

1. That he report to pretrial services at its direction;

2. That he stay away from the Mildred C. Hailey Apartments in Jamaica Plain;

3. That he have no contact with any of the co-defendants in this case except in the presence of counsel;

4. That he refrain from the use and possession of any illegal narcotics unless prescribed by a physician;

5. That he refrain from the excessive use of alcohol;

6. That he not apply for or obtain a passport;

7. That he report any contact with law enforcement personnel to his supervising officer as soon as possible;

8. That he not possess a firearm, destructive device, dangerous weapon, or ammunition; and

9. That he post a $10,000 unsecured bond.

1

I.      **Mr. Campbell's Background**

Mr. Campbell was born and raised in Boston. Up until he was 13, he lived in the Mildred C. Hailey Apartments in Jamaica Plain. Thereafter, he and his mother moved to Hyde Park. Mr. Campbell was raised primarily by his mother; his parents never married and he has had little to no contact with his father throughout his life. Mr. Campbell attended East Boston High School and earned a diploma. He worked various jobs after high school, including two years unloading new cars at a trainyard that were to be shipped to dealerships throughout Massachusetts.

Mr. Campbell has no record of criminal convictions. Prior to his charge in this case, the most recent entry on his adult record was for operating a motor vehicle with a suspended license in 2018, which was dismissed. In fact, all of the charges on his adult record resulted in dismissals. Only one of these cases, a 2018 charge of use of a motor vehicle without authority, resulted in a period of probation; Mr. Campbell received a continuance without a finding, which ultimately led to dismissal of the charge.

Mr. Campbell and his partner, Ta'Cori Alston, have been a couple for six years. They quickly hit it off after meeting and have been nearly inseparable ever since. Together they have two children: a daughter, Kamiele (4 years old) and a son, Keonte, Jr. (2 years old). Mr. Campbell also has a six-year-old daughter, Brielle, from a prior relationship who spends considerable time with him and his two other children. In 2019, Mr. Campbell and Ms. Alston moved to Fitchburg to live with her mother. They moved to another apartment in Fitchburg in 2021. Mr. Campbell has a wonderful relationship with Ms. Alston's family. Likewise, her family supports him steadfastly; Ms. Alston's mother was present for Mr. Campbell's initial appearance and has offered to have him live with her while the case is pending. In early 2023, Ms. Alston suggested to Mr. Campbell that they relocate to Georgia. She has family in Atlanta that they had

visited over the years and rents were significantly cheaper than in Massachusetts. Mr. Campbell, who had only lived in Massachusetts up to this point in his life, agreed. It was an opportunity to raise his children in a nice, affordable neighborhood, something that he had not known growing up. The family relocated in April 2023 to a town about an hour outside of Atlanta, where Mr. Campbell lived up to the time of his arrest last month.

Despite living in Georgia, Mr. Campbell frequently returned to Massachusetts for medical care. As described in greater detail below, Mr. Campbell suffers from significant health problems. The quality of medical treatment in Massachusetts is vastly superior to that in rural Georgia, so Mr. Campbell and his family would make the trip back approximately every six weeks. They would have to drive back and forth due to Mr. Campbell's condition, which makes air travel unsafe for him.

Mr. Campbell's life in Georgia is a quiet one. He and his family rent a three-bedroom home that is far bigger than anything they would have been able to afford in Massachusetts. Ms. Alston supports the family financially through her finance job at CarMax because Mr. Campbell is largely unable to work—Mr. Campbell's condition makes physical labor difficult if not impossible for him to perform. They attend a Methodist church, where Ms. Alston volunteers with school children and Mr. Campbell acts a greeter for a small pay.

## II.   <u>Medical Considerations</u>

Mr. Campbell suffers from sarcoidosis, an inflammatory disease that affects the lungs.[1] Mr. Campbell has the most severe form of the illness, having been diagnosed with stage IV. He first experienced symptoms from the disease in the fall of 2022. The symptoms began with a persistent dry cough, shortness of breath, and repeated medical visits for what was initially

---

[1] Copies of Mr. Campbell's relevant medical records have been submitted under seal as Exhibit 1 to this pleading.

thought to be pneumonia. After an x-ray in March 2023, it was discovered that Mr. Campbell's right lung had collapsed. After being admitted to the hospital to recover, Mr. Campbell's left lung collapsed. Though initially diagnosed with stage II sarcoidosis, the rapid increase in the severity of his symptoms led to an updated stage IV diagnosis. The stage IV diagnosis reflects that Mr. Campbell's lungs have fibrosis and scarring, which results in significant respiratory impairment.

Mr. Campbell has undergone various forms of treatment to try and manage his illness. He was initially treated with steroids. After both of his lungs collapsed, Mr. Campbell had tubes inserted into both sides of his chest to help drain air and allow his lungs to expand. He has been treated with various medications since the lung collapse, none of which he has received in proper dosages since being incarcerated. Shortly before his arrest, Mr. Campbell was evaluated at Brigham and Women's Hospital for a lung transplant. If released, he expects that he will first undergo a procedure called pleurodesis, which is intended to stabilize him to the point when he is able to under a transplant if a lung becomes available. During his incarceration, his thoracic surgery team has unsuccessfully attempted to contact him to schedule this procedure.

This illness has taken a debilitating toll on Mr. Campbell's life. Where he was previously physically fit and active, he now has difficulty performing routine physical tasks. He has been largely unable to work since the onset of his illness, aside from light tasks with his church in Georgia that gave him parttime employment. He has difficulty climbing stairs and standing for long periods of time. He is almost always short of breath and needs an inhaler with him at all times to assist him. He is not supposed to fly, which has required him and his family to drive back and forth from Georgia to Massachusetts to visit family and attend his medical appointments. The sickness has also made it difficult to care for his young children, the physical

4

aspects of which have largely fallen to his partner.

Mr. Campbell's medical condition is not properly managed in a jail. In a letter dated April 30, 2024, his doctor notes that he must avoid respiratory irritants and that it is critically important that he be kept away from people who are sick because he has a weakened immune system. She also indicates that he needs medical professionals readily available to monitor his condition and assess whether he needs emergency care. Importantly, he requires consistent and interrupted access to his daily medications. Mr. Campbell has not received proper medication since being incarcerated, including receiving a reduced daily dose of Prednisone, the medication he most critically needs.[2] It also goes without saying that his odds of receiving a lung transplant while in custody are next to zero. Simply put, every day spent in custody seriously endangers Mr. Campbell's present and future health.

### III.   Procedural History and Case Background

Mr. Campbell was indicted on February 7, 2024 and charged with a single count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). At the time of the indictment, Mr. Campbell was living in Georgia, where he and his family have resided for the past year. He was unaware of the charge against him until arrested by federal authorities at his home on March 6, 2024. He made his initial appearance in the Northern District of Georgia the same day and consented to voluntary detention pending transfer to this district. Mr. Campbell was then flown to Oklahoma and subsequently to Pennsylvania, despite his medical condition that prevents him from being able to safely travel by air. Mr. Campbell made his initial appearance before this Court on April 25, 2024.

---

[2] The undersigned has discussed this issue with the medical unit at Wyatt several times since being appointed last Thursday. As of this filing, counsel's understanding is that Mr. Campbell is still not receiving his proper medications.

The government accuses Mr. Campbell of being a member/associate of the Heath Street gang, which it alleges operated out of the Mildred C. Hailey Apartments in the Jamaica Plain section of Boston. Mr. Campbell is referenced a scant three times in the government's detention affidavit (ECF No. 64-1). The first is in the caption of an undated, unsourced photograph purportedly showing Mr. Campbell holding a firearm. ECF No. 64-1 at ¶ 12. The second is in the description of a recorded jail call between co-defendants Lyons and Bell from August 10, 2019. *Id.* at ¶ 36. In this call, Bell described for Lyons a run-in between Heath Street members and rival gang associates the previous day. He alleged stated that Mr. Campbell was armed and drew a gun but "no violence occurred." The final mention of Mr. Campbell comes in the description of an alleged homicide committed by a juvenile on June 7, 2021. *Id.* at ¶ 42. The government claims that Mr. Campbell and co-defendant Avalo "acted as getaway drivers" for the juvenile after the shooting. No other information about Mr. Campbell's alleged involvement in this conspiracy is described in the affidavit.

## IV.   <u>Argument</u>

The Supreme Court held in *United States v. Salerno* that "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. 739, 755 (1987). This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d

189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984

U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992)

("There can be no doubt that this Act clearly favors nondetention.").

"Generally, it is the government's burden to persuade the court that pretrial detention is

warranted." *United States v. Riley*, 322 F. Supp. 3d 242, 243 (D. Mass. 2018). This burden of

persuasion is clear and convincing evidence that no conditions will assure the community's

safety and by a preponderance of the evidence that the defendant is a serious flight risk. *United*

*States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). It is insufficient for a defendant to pose a

danger to the community in theory; the government must establish the defendant is an actual

danger. *See id.* at 792.

As grounds for its detention request, the government contends that Mr. Campbell should

held because he is charged with an offense involving the possession or use of a firearm (18

U.S.C. § 3142(f)(1)(E)), there is a serious risk that he will flee (18 U.S.C. § 3142(f)(2)(A)), and

because there is a serious risk that he will attempt to obstruct justice (18 U.S.C. § 3142(f)(2)(B)).

The government's motion makes a generalized request as to the 14 defendants charged in the

indictment and cites the same statutory bases for detention as to each of them. As discussed

below, none provides grounds on which to detain Mr. Campbell and the Court should therefore

release him.

### a. Mr. Campbell is neither a danger to the community nor a serious flight risk.

The evidence the government has provided as of this filing is insufficient to warrant a

finding that Mr. Campbell is a danger such that no conditions of release can assure the safety of

the community. Mr. Campbell's alleged conduct dates to 2021. The government does not allege

that he was the principal in the shooting described in the affidavit. Rather, the evidence suggests

that he was somehow involved in the aftermath as a driver. There is no indication that he was involved in the planning or preparation of the offense. Instead, what is alleged, viewing the evidence even in the light most favorable to the government, is that he was an accessory after the fact. That is not to suggest that this is not a serious accusation, but rather to place his charged conduct in perspective of the wider conspiracy alleged in the indictment.

Regardless, the proposed conditions of release will guarantee the community's safety. Mr. Campbell has not resided in Boston for several years and would not do so if released. He would not be in touch with any of the alleged co-conspirators. He will also be under the supervision of pretrial services to monitor whether he has contact with law enforcement or is otherwise engaged in unlawful conduct. He would also be prohibited from using substances, which he has not done for several years to begin with.

Mr. Campbell's disease also suggests that he poses little to no risk to the community. He has trouble walking and standing for long periods of time, struggles with his breathing, requires frequent use of an inhaler just to maintain casual conversation, and is typically required to undergo extended rest periods. He is barely in good enough physical health to care for his young children, let alone commit crimes.

As described, Mr. Campbell has longstanding ties to this community. He was born and raised in Boston and lived in Fitchburg from 2019 to 2023. His partner's mother continues to reside in Fitchburg and has space available for Mr. Campbell to stay with her. Though pretrial services indicated that it would not oppose Mr. Campbell's return to Georgia to be with his partner and children, due to his medical issues he and his family believe it would be best if he resided in Fitchburg for the time being. Spending the last two months in custody without proper medical care is a major factor in this decision. If Mr. Campbell lived in Fitchburg, he would be

close to his care providers at UMass Memorial Hospital in Worcester, where his pulmonologist is based. If released, he intends to meet with his doctors as soon as possible to assess what if any care he needs in light of being imprisoned without adequate care since early March.

This is also not a case where Mr. Campbell was arrested outside of this district because he fled in the wake of the indictment. Mr. Campbell resettled in Georgia nearly a year before the indictment in this case was unsealed. Though several of the co-defendants were arrested in mid-February, Mr. Campbell was not taken into custody until March 6, 2024. Law enforcement arrived at his home that morning and arrested him without incident on the warrant. There is no indication that he resisted or attempted to flee.

Additionally, Mr. Campbell has no significant ties to communities other than Massachusetts and Georgia. These are the only two places that he has ever lived. He has never left the United States and does not have a passport.

Mr. Campbell also lacks the financial resources to flee and avoid law enforcement. His family subsists almost exclusively on his partner's salary. Though they are able to provide for their children and rent a modest home in a rural neighborhood, they are not a wealthy family. Indeed, Mr. Campbell's medical condition has hampered his ability to work for the last two years and he has been largely unable to do so since he was diagnosed.

Mr. Campbell's illness also mitigates his risk of flight. As noted, he requires regular and frequent medical care to assure his well-being. He should be receiving consistent daily medications and meeting with his doctors on a regular basis to guarantee his health remains stable. He has a well-established medical team that is based at a hospital in Worcester. Perhaps most importantly, Mr. Campbell is being considered for a potential lung transplant through Brigham and Women's Hospital. Fleeing to avoid this case all but guarantees he will not receive

the life-saving medical attention he requires.

Undoubtedly, this is a serious case. However, the nature of the charge alone does not make Mr. Campbell a serious flight risk. *See generally United States v. Giordano*, 370 F. Supp. 2d 1256 (S.D. Fla. 2005) (serious charges do not necessarily equate to serious risk of flight). An examination of the relevant factors used to assess whether a defendant is a serious flight risk leads to the conclusion that this is an insufficient basis to detain Mr. Campbell.

### b.  Mr. Campbell does not present a serious risk to obstruct justice.

There is no evidence suggesting that Mr. Campbell will obstruct justice or interfere with any potential witnesses in this case if released. The proposed conditions would require him to have no contact with others involved in this case and to stay away from the area in which the government alleges this conspiracy operated. He would also be living away from the area in a home with his partner's mother. Moreover, there is nothing specific to Mr. Campbell in the government's motion or affidavit that indicates that he will engage in such conduct. A generalized concern about the risk of obstruction is insufficient; rather, there must be some evidence to believe that the defendant will actually engage in such conduct. *See United States v. DeGrave*, 539 F. Supp. 184, 207 (D.D.C. 2021) (serious risk of obstruction of justice existed where government proffered evidence that defendant deleted social media messages and asked others to do the same related to his participation in January 6 insurrection). Where there is no such particularized evidence as to Mr. Campbell, this is an inappropriate basis to hold him.

### V.  <u>Conclusion</u>

Mr. Campbell does not gainsay the seriousness of this case or the charge against him. He recognizes that if the Court releases him, it will be subject to conditions to assure that the community remains safe and that he appears at all future proceedings. The government has fallen

far short of meeting its burden of persuading this Court that he should remain in custody. Mr.

Campbell's strong family support, ties to the community, lack of prior criminal record, and

serious medical complications counsel in favor of his release pending trial. He urges the Court to

deny the government's motion and release him subject to the conditions described herein.

KEONTE CAMPBELL
By his attorney,

*Daniel J. Gaudet*

Daniel J. Gaudet, B.B.O. # 688120
Carney, Gaudet & Carney
20 Park Plaza, Suite 614
Boston, MA 02116
617-933-0350
DGaudet@CarneyDefense.com

April 30, 2024

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on or before the
above date.

*Daniel J. Gaudet*

Daniel J. Gaudet